**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

ALAURA LAVOILE,

Plaintiff,

v.

WASTE MANAGEMENT INC. OF FLORIDA,

Defendant.
_______________________________/

Case No.: ____________________

COMPLAINT AND DEMAND FOR JURY TRIAL

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, ALAURA LAVOILE ("Plaintiff" or "Ms. Lavoile"), by and through undersigned counsel, sues Defendant, WASTE MANAGEMENT INC. OF FLORIDA ("Defendant" or "WM"), and alleges as follows:

**INTRODUCTION**

1. This is an employment discrimination action arising from WM's refusal to hire a qualified female commercial driver for driver positions in 2025 and its sex-based steering of Plaintiff away from driver work and toward non-driver or desk work.

2. Plaintiff is a woman who possesses a Class A Commercial Driver License and has experience operating both Class B commercial vehicles and Class A tractor-trailers, including interstate driving across the country.

3. Despite those qualifications, WM repeatedly declined to hire Plaintiff for driver positions. During the hiring process, Plaintiff was expressly told that if she wanted to be hired by WM, she should apply for a desk or other non-driver position because women were not hired as drivers.

4. The 2025 conduct did not occur in a vacuum. Years earlier, during a January 10, 2018 interview for a driver position at WM's Port Charlotte location, a WM representative told Plaintiff that "women can't throw garbage," and the interview ended.

5. Plaintiff does not seek damages in this action based on the 2018 hiring decision as a separate adverse action. Rather, the 2018 event is relevant background evidence bearing on discriminatory intent, WM's institutional knowledge, the credibility of WM's later explanations, and whether the discrimination Plaintiff encountered in 2025 was isolated or part of a broader pattern of conduct.

6. That background evidence became particularly significant in 2025 when a WM human resources representative addressed the 2018 incident with Plaintiff, represented that the individual responsible had been terminated, referred to prior personnel as "bad apples," and acknowledged a problem concerning the hiring of women.

7. Plaintiff's account is further corroborated by individuals with firsthand knowledge of WM's hiring practices. Plaintiff's son worked for WM during the relevant period and personally observed members of hiring staff make jokes about female applicants and discard applications submitted by women. A friend and coworker of Plaintiff's son independently reported firsthand knowledge of the same conduct.

8. WM has since asserted that Plaintiff was not selected because other candidates were better qualified and because of matters such as alleged limited industry experience, employment gaps, short periods of employment, and proximity to a worksite. Plaintiff denies that those explanations fully or truthfully explain the challenged decisions and alleges that they are pretextual when considered together with the sex-specific comments, the steering away from driver work, WM's own HR acknowledgment, Plaintiff's objective commercial-driving qualifications, and the corroborating witness evidence.

9. WM's decision to hire one or more other women does not resolve whether WM discriminated against Plaintiff individually. Title VII and the Florida Civil Rights Act protect individual applicants from discrimination because of sex, and an employer does not obtain immunity from liability merely because it hired another member of the same protected class.

**PARTIES**

10. Plaintiff Alaura Lavoile is an adult woman and resident of Florida who, at all material times, sought employment with WM as a commercial driver.

11. Plaintiff is a member of a protected class based on sex.

12. Defendant Waste Management Inc. of Florida is a Florida corporation or other business entity authorized to conduct business in Florida and, at all material times, operated waste collection and hauling facilities and employed personnel in Florida, including at or near Port Charlotte and Fort Myers.

13. At all material times, WM was an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, as amended, and the Florida Civil Rights Act.

14. At all material times, the WM managers, interviewers, human resources personnel, onboarding personnel, and other agents referenced in this Complaint acted within the course and scope of their employment or agency with WM, or with actual or apparent authority on WM's behalf.

## JURISDICTION AND VENUE

15. This Court has federal-question jurisdiction over Plaintiff's Title VII claim pursuant to 28 U.S.C. Sections 1331 and 1343 and 42 U.S.C. Section 2000e-5(f)(3).

16. This Court has supplemental jurisdiction over Plaintiff's related claim under the Florida Civil Rights Act pursuant to 28 U.S.C. Section 1367 because the federal and state claims arise from the same nucleus of operative facts.

17. Venue is proper in the Middle District of Florida because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within this District, including the 2025 hiring processes for positions located in Port Charlotte and Fort Myers, Florida.

18. The Fort Myers Division is the division most directly connected to this action because Fort Myers is located in Lee County and Port Charlotte is located in Charlotte County, both of which are within the Fort Myers Division.

## ADMINISTRATIVE PREREQUISITES

19. On or about February 11, 2026, Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), Charge No. 510-2026-05469, alleging sex discrimination arising from WM's 2025 hiring practices and failures to hire.

20. Plaintiff's EEOC Charge was filed within 300 days of the challenged 2025 employment practices.

21. Plaintiff's EEOC filing also satisfies the filing requirement applicable to the Florida Civil Rights Act because Florida law permits an aggrieved person to file the administrative complaint with the EEOC in lieu of filing directly with the Florida Commission on Human Relations.

22. More than 180 days have elapsed since Plaintiff filed her administrative Charge.

23. On July 22, 2026, the EEOC issued Plaintiff a Notice of Right to Sue. This action is filed within 90 days of Plaintiff's receipt of the Notice.

24. With respect to the Florida Civil Rights Act claim, Plaintiff has satisfied the applicable administrative prerequisites and may proceed with a civil action after the expiration of the statutory administrative period, subject to the specific determination or notice dates reflected in the administrative record.

25. All conditions precedent to the institution of this action have occurred, have been performed, or have been waived, except to the extent the highlighted Right-to-Sue dates above must be completed before filing.

## FACTUAL ALLEGATIONS

26. Plaintiff sought employment with WM as a driver, not as an office worker or in another non-driving position.

27. Plaintiff possesses a Class A Commercial Driver License.

28. Plaintiff's Class A CDL authorizes operation of commercial combination vehicles within the license classification, subject to applicable endorsements and restrictions, and reflects commercial-driving qualifications directly relevant to WM's driver positions.

29. Plaintiff has a history of operating Class B commercial vehicles.

30. Plaintiff has also operated Class A semi-trucks and has driven commercial vehicles across the country.

31. Plaintiff therefore had meaningful commercial-driving experience directly relevant to the driver positions for which she applied.

32. Plaintiff was sufficiently qualified to pass WM's initial screening process and to be selected for in-person interviews in 2025.

33. WM's own decision to advance Plaintiff through multiple stages of the hiring process is inconsistent with any suggestion that she was facially unqualified for the driver positions.

34. On January 10, 2018, Plaintiff attended an in-person interview at WM's Port Charlotte location for a driver position.

35. During that interview, a WM representative told Plaintiff, in substance and effect, "women can't throw garbage."

36. The interview ended and Plaintiff was not hired.

37. The statement was expressly sex-based and communicated that WM personnel viewed women as unsuitable for garbage-collection driver work.

38. Plaintiff does not assert the 2018 non-selection as a separate, independently actionable adverse employment practice in this Complaint.

39. Instead, Plaintiff alleges the 2018 event as relevant background evidence of sex-based attitudes within WM, WM's knowledge of those attitudes, and the discriminatory context in which Plaintiff's later 2025 applications were evaluated.

40. In 2025, Plaintiff again sought employment with WM as a driver and applied for driver opportunities in Southwest Florida, including positions associated with Port Charlotte and Fort Myers.

41. In connection with those applications, Plaintiff participated in a video or Zoom screening with a WM human resources or onboarding representative whom Plaintiff understood to be named Carey or Kerri.

42. During that conversation, the WM representative addressed Plaintiff's prior 2018 experience.

43. The representative stated that the person responsible for the prior conduct had been terminated and referred to prior personnel as "bad apples" who had been removed.

44. The representative further acknowledged to Plaintiff that WM had experienced a problem concerning the hiring of women.

45. These statements were significant because they confirmed to Plaintiff that WM itself was aware of prior concerns involving the treatment of female applicants for work traditionally performed by men.

46. The WM representative encouraged Plaintiff to proceed with an in-person interview for a Port Charlotte driver position.

47. Plaintiff participated in an in-person interview for the Port Charlotte driver position in July 2025.

48. WM later advised Plaintiff that it preferred a candidate who lived closer to the Port Charlotte facility.

49. Plaintiff had not been advised that residence in or immediately near Port Charlotte was a minimum qualification for the position.

50. WM later asserted that proximity was considered because the selected candidate lived in Port Charlotte while Plaintiff lived farther away in the Fort Myers area.

51. Plaintiff alleges that the proximity explanation must be evaluated together with the sex-based history described above, the HR representative's acknowledgment concerning problems hiring women, the steering Plaintiff later experienced in Fort Myers, and the testimony of witnesses who observed discriminatory treatment of female applicants.

52. Plaintiff further alleges that WM's selection of another woman for the Port Charlotte position does not establish that sex played no role in WM's treatment of Plaintiff individually.

53. After the Port Charlotte process, a WM representative suggested that Plaintiff apply for a driver position in Fort Myers, where Plaintiff lived.

54. Plaintiff participated in a video screening for the Fort Myers driver position and was selected to advance to an in-person interview.

55. Plaintiff attended an in-person interview for the Fort Myers driver position on or about July 16, 2025.

56. During the Fort Myers interview, WM representatives discussed matters associated with employment, including benefits and overtime opportunities.

57. During that same hiring process, Plaintiff was told that if she wanted to be hired by WM, she should apply for a non-driver or desk position because women were not hired as drivers.

58. The statement directly communicated that Plaintiff's sex affected the type of employment opportunity WM personnel considered appropriate for her.

59. The statement also attempted to steer Plaintiff away from the driver position she sought and toward work WM personnel considered more suitable for a woman.

60. Plaintiff did not seek a desk job. She sought work as a commercial driver and possessed the licensing and experience relevant to that work.

61. Plaintiff was further told during the process that an interviewer did not control hiring, although Plaintiff had previously been led to understand that the same individual did have hiring authority for the Fort Myers location.

62. The morning after the Fort Myers interview, at approximately 8:00 a.m., Plaintiff received notice that she had been denied the driver position.

63. The close timing between the interview, the sex-based steering, and the rejection further supports Plaintiff's allegation that sex affected WM's decision-making.

64. During the relevant general period, Plaintiff's son worked for WM.

65. Plaintiff's son personally observed members of WM's hiring staff make jokes or disparaging comments about women when women applied for employment.

66. Plaintiff's son also personally observed applications submitted by women being discarded or thrown away by hiring personnel.

67. The conduct he observed was not based on anything Plaintiff told him; it was conduct he personally witnessed while working at WM.

68. A friend and coworker of Plaintiff's son also possessed firsthand knowledge of the same or substantially similar conduct toward female applicants.

69. After Plaintiff told her son and his friend how she had been treated during WM's hiring process, both men informed Plaintiff that her experience was consistent with conduct they had personally observed at WM.

70. The firsthand accounts of these witnesses corroborate Plaintiff's allegation that discriminatory attitudes toward female applicants existed among personnel involved in hiring.

71. WM has asserted that Plaintiff was not selected for the Fort Myers position because she was not the strongest candidate and has referenced alleged limited industry experience, gaps in employment, and several short periods of employment.

72. Plaintiff disputes the characterization that she lacked sufficient industry experience.

73. Plaintiff possessed a Class A CDL and had experience driving both Class B commercial vehicles and Class A semi-trucks, including long-distance commercial driving.

74. WM's screening personnel advanced Plaintiff through preliminary screening and selected her for an in-person interview, demonstrating that her qualifications were sufficient to merit serious consideration.

75. WM's generalized reliance on employment history does not account for the sex-specific statement directing Plaintiff away from driver work and toward desk or non-driver work.

76. WM's generalized reliance on qualifications likewise does not explain the prior express statement that "women can't throw garbage," WM's HR acknowledgment of a known problem concerning the hiring of women, or the firsthand witness accounts concerning jokes about female applicants and disposal of women's applications.

77. WM has also relied on the fact that it hired one female candidate for Port Charlotte and one female among multiple hires for Fort Myers.

78. The hiring of another woman does not establish that Plaintiff herself was free from discriminatory treatment.

79. An employer can discriminate against one woman because of sex even if it hires another woman, and the relevant inquiry is whether Plaintiff's sex was a motivating factor in the challenged treatment and decisions concerning Plaintiff.

80. WM has further denied that its representatives made the sex-based steering statement during the Fort Myers interview.

81. Plaintiff unequivocally maintains that the statement was made.

82. That factual dispute presents a credibility issue that cannot be resolved merely by WM's denial and must be evaluated in light of the surrounding evidence.

83. The combination of direct sex-based comments, WM's institutional acknowledgment of concerns regarding women in hiring, corroborating eyewitness evidence, Plaintiff's objective qualifications, and WM's shifting or generalized explanations supports a reasonable inference that WM's stated nondiscriminatory reasons are pretextual.

84. As a direct and proximate result of WM's discriminatory conduct, Plaintiff lost employment opportunities and compensation she would have received had she been hired into a driver position.

85. Plaintiff's economic damages include lost wages, lost overtime opportunities, lost benefits, and other employment-related compensation.

86. Plaintiff has also suffered humiliation, embarrassment, mental anguish, emotional distress, loss of dignity, inconvenience, and other non-economic harm.

87. WM's conduct was intentional.

88. Plaintiff alleges that the discriminatory conduct occurred despite WM's knowledge of prior concerns regarding discrimination against women and despite the involvement of management, hiring, human resources, and onboarding personnel.

89. To the extent proven, WM acted with malice or reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages as permitted by law.

## COUNT I - SEX DISCRIMINATION, FAILURE TO HIRE, AND DISCRIMINATORY STEERING TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

90. Plaintiff realleges and incorporates paragraphs 1 through 89 as though fully set forth herein.

91. Title VII makes it unlawful for an employer to fail or refuse to hire an individual, or otherwise discriminate against an individual with respect to employment opportunities, because of that individual's sex.

92. Plaintiff is a woman and therefore a member of a class protected by Title VII.

93. Plaintiff applied for available driver positions with WM in 2025.

94. Plaintiff was qualified for the driver positions based on, among other things, her Class A CDL and her experience operating Class B commercial vehicles and Class A semi-trucks.

95. WM advanced Plaintiff through its screening processes and selected her for in-person interviews, further demonstrating that she satisfied the threshold qualifications for the positions.

96. WM nevertheless failed or refused to hire Plaintiff for the driver positions.

97. During the timely 2025 hiring process, WM personnel expressly steered Plaintiff away from driver work and toward a desk or non-driver position on the stated basis that women were not hired as drivers.

98. The sex-based steering constitutes direct or circumstantial evidence that sex infected the hiring process and affected the employment opportunities made available to Plaintiff.

99. The challenged 2025 decisions are further supported by background and corroborating evidence, including the prior statement that "women can't throw garbage," WM HR's acknowledgment of a problem concerning the hiring of women, and firsthand witness observations of hiring

personnel joking about female applicants and discarding women's applications.

100. WM's asserted explanations, including that Plaintiff was not the strongest candidate, that other candidates had better qualifications, and that proximity to a facility affected a decision, are not the true or complete reasons for WM's treatment of Plaintiff and are pretextual.

101. The fact that WM hired another woman for one or more positions does not negate discrimination against Plaintiff and does not eliminate the evidence that Plaintiff's sex was a motivating factor in WM's treatment of her.

102. WM's conduct constituted intentional discrimination because of sex in violation of Title VII.

103. As a direct and proximate result, Plaintiff suffered the damages described above.

104. Plaintiff is entitled to all legal and equitable relief available under Title VII, including back pay, front pay where appropriate, instatement where appropriate, compensatory damages, punitive damages to the extent permitted by law, prejudgment interest, post-judgment interest, attorney's fees, costs, and injunctive and declaratory relief.

## COUNT II - SEX DISCRIMINATION, FAILURE TO HIRE, AND DISCRIMINATORY CLASSIFICATION OR STEERING FLORIDA CIVIL RIGHTS ACT, SECTION 760.10, FLA. STAT.

105. Plaintiff realleges and incorporates paragraphs 1 through 89 as though fully set forth herein.

106. Section 760.10(1)(a), Florida Statutes, makes it an unlawful employment practice for an employer to fail or refuse to hire an individual, or otherwise discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of sex.

107. Section 760.10(1)(b), Florida Statutes, further prohibits an employer from limiting, segregating, or classifying applicants for employment in a manner that deprives or tends to deprive an individual of employment opportunities because of sex.

108. Plaintiff is a woman and therefore a member of a class protected by the Florida Civil Rights Act.

109. Plaintiff applied for available driver positions with WM in 2025 and was qualified for those positions.

110. WM failed or refused to hire Plaintiff for the driver positions.

111. WM personnel also classified or steered Plaintiff toward a desk or non-driver position because she is a woman, thereby depriving or tending to deprive her of the driver employment opportunities she sought.

112. The discriminatory classification and steering were expressly sex-based and are consistent with other evidence demonstrating discriminatory attitudes toward women seeking driver work.

113. WM's stated nondiscriminatory reasons are not the true or complete reasons for its treatment of Plaintiff and are pretextual.

114. WM's conduct constitutes intentional discrimination because of sex in violation of the Florida Civil Rights Act.

115. As a direct and proximate result of WM's violations, Plaintiff has suffered and continues to suffer economic and non-economic damages.

116. Plaintiff is entitled to all relief available under the Florida Civil Rights Act, including affirmative and injunctive relief, back pay, front pay where appropriate, compensatory damages for mental anguish and loss of dignity, punitive damages as permitted by statute, prejudgment interest, post-judgment interest, attorney's fees, costs, and all other relief the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Alaura Lavoile respectfully requests that the Court enter judgment in her favor and against Defendant Waste Management Inc. of Florida and award the following relief:

A. A declaration that WM's acts and practices complained of herein violated Title VII and the Florida Civil Rights Act;
B. An order enjoining WM from engaging in unlawful sex discrimination in hiring and requiring appropriate corrective measures;
C. Instatement into an appropriate full-time driver position, if feasible and appropriate, or front pay in lieu of instatement;
D. Back pay, including lost wages, lost overtime, lost benefits, and other compensation Plaintiff would have earned absent discrimination;
E. Compensatory damages for emotional distress, mental anguish, humiliation, embarrassment, inconvenience, loss of dignity, and other intangible injuries;
F. Punitive damages to the fullest extent permitted by applicable law;
G. Prejudgment and post-judgment interest as permitted by law;
H. Reasonable attorney's fees and taxable costs pursuant to applicable law;
I. Such additional equitable relief as is necessary to make Plaintiff whole; and
J. All other relief the Court deems just, proper, and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 15, 2026.

Respectfully submitted,

**MCINTYRE & BERMUDEZ, PLLC**

*/s/ Reinaldo Rodriguez*
**Victor R. Bermudez, Esq.**
Florida Bar No. 1010344
**Reinaldo Rodriguez, Esq.**
Florida Bar No. 1057890
*Counsel for Plaintiff*
1520 Royal Palm Square Blvd.
Suite 210
Fort Myers, FL 33919
(P) 239.935.8426
(F) 239.291.6668
victor@mbcounsel.com
ray@mbcounsel.com
karenia@mbcounsel.com

**CERTIFICATE OF SERVICE**

I hereby certify that on September 14, 2026, I caused the foregoing document to be electronically filed via the Court's CM/ECF system, which will send electronic notification of such filing to all registered counsel. The foregoing document was also sent via email and process server to Defendant

*/s/ Reinaldo Rodriguez*
**Reinaldo Rodriguez**